# IN THE UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| ALICE HIGGINS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 4:18-CV-0417-SRB |
| v. ) | |
| ) | |
| ALLY FINANCIAL INC., ) | |
| ) | |
| Defendant. ) | |

## ORDER

Before this Court is Defendant Ally Financial Inc.'s Motion to Compel Arbitration and Dismiss Action. (Doc. #7). For reasons explained below, the motion is granted.

**I.     Background**

On December 12, 2016, Plaintiff Alice Higgins entered into a contract with Overland Park Automotive Co. LP d/b/a Hendrick Toyota ("Seller") for the purchase of a new automobile, to be financed by Defendant. (Doc. #8-1, p. 3). The car purchase contract contained an arbitration provision. (Doc. # 8-1, p. 4). Shortly after Plaintiff and Seller entered into the car purchase contract, Seller assigned its interests under the contract to Defendant. (Doc. # 8-1, p. 3). At this point in time, Plaintiff was a Kansas resident and registered her vehicle in Kansas. (Doc. #17, ¶ 11).

Plaintiff enrolled in Defendant's online automatic pay system, through which Plaintiff would make her monthly car payments to Defendant. (Doc. #24, p. 1). Plaintiff alleges that in January 2018, after she had "been late on approximately three payments," Plaintiff began receiving automated phone calls from defendant "multiple times per day, up to eight times, Monday through Sunday." (Doc. 17, ¶¶ 20–21). Plaintiff also alleges that since she moved to

Missouri in September 2017 Defendant has "failed to provide the out-of-state title to the Missouri DMV" so that she can register her vehicle in Missouri. (Doc. #17, ¶17).

On April 24, 2018, Plaintiff brought suit against Defendant in the Circuit Court of Jackson County, Missouri. (Doc. #24, p. 2). Plaintiff alleges that "[s]hortly after, if not coinciding with, [Defendant's] receipt of service in this case, [Defendant] locked Plaintiff out of her online account . . . ." (Doc. #17, ¶ 34). On May 30, 2018, Plaintiff's lawsuit was removed to this Court. (Doc. #1, p. 6). Plaintiff alleges several causes of action in her First Amended Complaint, including a violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.*, and violations of the Kansas Consumer Protection Act, K.S.A. § 50-623, *et seq.* (Doc. #17). Plaintiff seeks damages and injunctive relief. (Doc. #17). In June 2018, Defendant's counsel contacted Plaintiff's counsel "to request that Plaintiff agree to dismiss this matter and arbitrate her claims" in accordance with the arbitration provision in the car purchase contract. (Doc. #8, p. 3). Plaintiff refused. (Doc. #8, p. 4). Defendant, invoking the arbitration provision contained in the car purchase contract, moves this Court to compel arbitration and dismiss Plaintiff's suit with prejudice. (Doc. #7, p. 1).

**II.    Legal Standard**

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, governs arbitration provisions in contracts involving interstate commerce. Section 2 of the FAA requires that "[a] written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or equity for the revocation of any contract." This language in § 2 constitutes "a congressional declaration of a liberal federal policy favoring arbitration agreements," *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,

460 U.S. 1, 24 (1983), and reflects the "fundamental principle that arbitration is a matter of contract." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (quoting *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 68 (2010)). Accordingly, courts must place arbitration agreements "on equal footing with all other contracts." *DIRECTV, Inc. v. Imburgia*, 136 S. Ct. 463, 468 (2015) (quoting *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006)). The FAA therefore prohibits courts from "invalidat[ing] arbitration agreements under state laws applicable *only* to arbitration provisions . . . ." *Se. Stud & Components, Inc. v. Am. Eagle Design Build Studios, LLC*, 588 F.3d 963, 967 (8th Cir. 2009) (emphasis in original) (quoting *Doctor's Assocs. v. Casarotto*, 517 U.S. 681, 687 (1996)).

Under the FAA, when a purported arbitration agreement is challenged district courts have the limited role of determining "1) whether the agreement for arbitration was validly made and 2) whether the arbitration agreement applies to the dispute at hand, i.e., whether the dispute *falls within the scope* of the arbitration agreement." *Unison Co., Ltd. v. Juhl Nergy Development, Inc.*, 789 F.3d 816, 818 (8th Cir. 2015) (emphasis in original) (quoting *Indus. Wire Prods., Inc. v. Costco Wholesale Corp.*, 576 F.3d 516, 520 (8th Cir. 2009)). The "threshold question of whether an enforceable arbitration agreement exists between litigants" is governed by state contract law. *Parm v. Bluestem Brands, Inc.*, 898 F.3d 869, 873 (8th Cir. 2018) (quoting *Donaldson Co. v. Burroughs Diesel, Inc.*, 581 F.3d 726, 731 (8th Cir. 2009)). If an enforceable arbitration agreement does exist, "the federal substantive law of arbitrability governs whether the litigants' dispute falls within the scope of the arbitration agreement." *Id.* Once a court determines that an enforceable arbitration agreement exists between the litigants and that their dispute falls within the scope of their arbitration agreement, a court must "make an order

directing the parties to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4.

**III.     Discussion**

No one disputes that the contract at issue here is one "evidencing a transaction involving commerce" within the meaning of the FAA and is therefore governed by the FAA. The parties do, however, dispute whether a valid arbitration agreement exists and whether Defendant is authorized to enforce it. Defendant argues that, in light of the "liberal federal policy favoring arbitration agreements," this Court should enforce the arbitration provision because it establishes a valid arbitration agreement between the litigants and their dispute falls within that agreement's scope. (Doc. #8, pp. 5, 7, 9) (quoting *Moses H. Cone*, 460 U.S. at 24)). Plaintiff brings two challenges to the arbitration provision at issue. First, Plaintiff argues that, to the extent there is a valid arbitration agreement, Defendant is not a party to it and therefore is not authorized to enforce it. (Doc. #24, p. 3). Second, Plaintiff argues in the alternative that, even if Defendant could be construed as a party, there is no valid arbitration agreement for Defendant to enforce because the arbitration provision "lacks consideration as a matter of law." (Doc. #24, p. 3).

Plaintiff does not dispute that her claims against Defendant fall within the scope of the arbitration clause. Instead, Plaintiff's two main challenges implicate only the first question that this Court must answer: whether there is a valid, enforceable arbitration agreement between the litigants at all. Therefore, if there is an enforceable arbitration agreement between Plaintiff and Defendant, the FAA requires this Court to grant Defendant's motion to compel. *See Pro Tech Industries, Inc. v. URS Corp.*, 377 F.3d 868, 871 (8th Cir. 2004) (where parties did not dispute whether claims fell within scope of arbitration provision, court's determination that arbitration

4

agreement was validly formed required court to "enforce the arbitration provision in accordance with its terms").

Under the car purchase contract's choice of law provision, which neither party disputes, "Federal law and Kansas law apply to this contract." (Doc. #8-1, p. 4). This Court will therefore look to Kansas law to determine whether there is an enforceable arbitration agreement between the parties. The relevant portions of the arbitration provision at issue are as follows. On page one of the car purchase contract, Plaintiff signed beneath a paragraph that states

> Agreement to Arbitrate: By signing below, you agree that, pursuant to the Arbitration Provision on the reverse side of this contract, you or we may elect to resolve any dispute by neutral, binding arbitration and not by a court action. See the Arbitration Provision for additional information concerning the agreement to arbitrate.

(Doc. #8-1, p. 3). On page two of the contract, a boxed section labeled "Arbitration Provision" states, "EITHER YOU OR WE MAY CHOOSE TO HAVE ANY DISPUTE BETWEEN US DECIDED BY ARBITRATION AND NOT IN COURT OR BY JURY TRIAL." (Doc. #8-1, p. 4). The arbitration provision further states

> Any claim or dispute, whether in contract, tort, statute or otherwise . . . **between you and us or our employees, agents, successors or assigns**, which arises out of or relates to your credit application, purchase or condition of this vehicle, this contract or any resulting transaction or relationship . . . shall, at **your or our** election, be resolved by neutral, binding arbitration and not by a court action.

(Doc. #8-1, p. 4) (emphasis added).

### A. Consideration and Mutuality of Obligation

Plaintiff argues that no enforceable arbitration agreement was formed between the parties because the arbitration provision itself—as opposed to the car purchase contract as a whole—

5

was not supported by consideration.[1]  In particular, Plaintiff argues that the arbitration provision itself lacks mutuality of obligation because, while it contains a "reservation of self-help remedies" for both parties, and there are no practical self-help remedies available to Plaintiff. (Doc. #24, p. 9).  Plaintiff cites several cases to support her argument, none of which are binding Kansas law, including the recent Kansas trial court decision of *Woods v. All Am. Auto Mart, Inc.* (Doc. #24, p. 9; Doc. # 24-1).

       This Court rejects Plaintiff's argument.  Under Kansas law, "[w]hen a contract is clear and unambiguous and no claim of fraud or overreaching is made and there is no claim that the agreement is unconscionable, it will generally be enforced as written." *Beeson v. Erickson*, 917 P.2d 901, 905 (Kan. Ct. App. 1996) (quoting *Estate of Bryant v. All Temperature Insulation, Inc.*, 916 P.2d 1294, 1298 (Kan. Ct. App. 1996)).  As long as a contract is not unconscionable, "a party who freely enters a contract is bound by it even though it was unwise or disadvantageous to the party." *Santana v. Olguin*, 208 P.3d 328, 332 (Kan. Ct. App. 2009) (quoting *Moler v. Melzer*, 942 P.2d 643, 645 (Kan. Ct. App. 1997)).  "A contract must be supported by consideration in order to be enforceable." *Varney Bus. Servs., Inc. v. Pottroff*, 59 P.3d 1003, 1014 (Kan. 2002).  "Consideration" means "some right, interest, profit, or benefit accruing to one party, or some forbearance, detriment, loss, or responsibility, given, suffered, or undertaken by the other." *Id.* (citing 17 Am. Jur. 2d *Contracts* § 113).  "[I]f the requirement of consideration is otherwise met, there is no additional requirement of mutuality of obligation." *White v. Four B Corp.*, No. 11-2416-JWL, 2011 WL 4688843, at *2 (D. Kan. Oct. 5, 2011)

---

[1] The point heading in Plaintiff's Suggestions in Opposition states that Plaintiff's motion to compel should be denied "because no agreement to arbitrate was ever formed as a matter of *Missouri* law." (Doc. #24, p. 8) (emphasis added).  In her arguments beneath this heading, however, Plaintiff acknowledges that "*Kansas* state law applies" and cites a Kansas trial court decision to support her argument. (Doc. #24, p. 9) (emphasis added).  Therefore, Plaintiff does not dispute that Kansas law governs the issue of whether an enforceable arbitration agreement was formed.

(citing *Commercial Asphalt, Inc. v. Smith*, 409 P.2d 796, 799 (Kan. 1966); Restatement (Second) of Contracts § 79(c) (1981) (applying Kansas law). Kansas law establishes a rebuttable presumption "that contracts are supported by consideration." *Uarco, Inc. v. Eastland*, 584 F. Supp. 1259, 1262 (D. Kan. 1984) (citing *Ferraro v. Fink*, 379 P.2d 266, 269 (Kan. 1963)). "A binding contract can be made by mutual promises; each promise furnishes a sufficient consideration for the other." *Kramer v. Walters*, 172 P. 1013, 1013 (Kan. 1918). Any Kansas mutuality-of-obligation requirement applying specifically to arbitration provisions would be preempted by the FAA. *White*, 2011 WL 4688843, at *3 (citing *Soto v. State Indus. Prods., Inc.*, 642 F.3d 67, 76–77 (1st Cir. 2011) (noting that any New Mexico law requiring mutuality of obligation within an arbitration clause "would be preempted by the FAA"); *Baker v. Anytime Labor-Kansas, LLC*, 2016 WL 924564, at *3 (W.D. Mo. Dec. 13, 2016) (quoting *White*, 2011 WL 4688843, at *3) (applying Kansas law and holding that arbitration provision in employment application that was, as a whole, supported by consideration was valid and enforceable on the ground that "mutuality of obligation within an arbitration clause cannot be required under state law because 'such a requirement would be preempted by the FAA'").

Here, no one challenges the validity of the car purchase contract as a whole, let alone that the contract as a whole is supported by consideration and mutuality of obligation. For example, Plaintiff received possession of, title to, and financing for her new car in exchange for her down payment, her promises to make future car payments, and the various promises she made under the arbitration provision. Plaintiff effectively seeks to read into Kansas law an independent mutuality requirement that applies specifically to an arbitration provision in a car purchase contract that is otherwise supported by consideration. (Doc. #24, p. 9) ("Kansas law requires arbitration agreements to have mutuality of obligation."). Plaintiff cites no binding Kansas law

7

to support her argument. Moreover, Plaintiff's reading of Kansas law falls squarely within the FAA's scope of preemption because such a reading would impermissibly "impose[] additional requirements that appl[y] only to arbitration agreements." *See Se. Stud*, 588 F.3d at 967; *White*, 2011 WL 4688843, at *3 (distinguishing *Dumais v. Am. Golf Corp.*, 299 F.3d 1216 (10th Cir. 2002), in which Tenth Circuit affirmed district court's denial of employer's motion to compel arbitration because employer's mutual promise to arbitrate was illusory; in *Dumais* "the lack of mutual arbitration obligations rendered the contract unenforceable because no other consideration supported the contract as a whole"). To impose an additional mutuality requirement specifically to the arbitration provision, notwithstanding the validity of the rest of the contract, would be to do exactly what the FAA prohibits: targeting arbitration provisions and thereby holding them on unequal footing with other contracts. *See Concepcion*, 563 U.S. at 341–43. Because the arbitration provision in this case is part of the car purchase contract, and because it is undisputed that the car purchase contract as a whole is supported by consideration, the arbitration provision is not invalid for failure to satisfy some additional mutuality of obligation requirement. *See White*, 2011 WL 4688843, at *2.

Plaintiff's reliance on the Kansas District Court's decision in *Woods* does not change the analysis. Even if *Woods* were binding Kansas precedent, which it is not, it is distinguishable from the present case. In *Woods*, the plaintiff sued an auto dealer for the return of her down payment on the car she purchased from the defendant dealer, which the defendant dealer later repossessed after the plaintiff was unable to obtain financing for the car. (Doc. #24-1, p. 1). The *Woods* court reasoned that the arbitration agreement at issue was not supported by consideration because "the arbitration agreement was not part of the original sales contract" and that the arbitration agreement "was signed after the initial purchase contract was signed, after the down

8

payment was made, and after the vehicle had been delivered to Plaintiff." (Doc. #24-1, p. 4). The court also found that the arbitration agreement was "not mutual" because it required Plaintiff to arbitrate all claims, whereas the Defendant car dealer was "free to resort to repossession . . . and then force Plaintiff's claims to arbitration." (Doc. #24-1, p. 4).

Here, in contrast, the arbitration provision was part of the original car purchase contract, which, as a whole, is indisputably supported by consideration. It is true that the arbitration provision that the *Woods* court found to lack mutuality of obligation and the arbitration provision disputed in this case contain similar language. But the *Woods* court relied on a Missouri case, *Brewer v. Mo. Title Loans*, 364 S.W.3d 486 (Mo. banc 2012), not Kansas law, to reach its decision even though the arbitration provision in *Woods* was governed by Kansas law. Moreover, the *Brewer* case on which the *Woods* court relied is distinguishable both from *Woods* and the present case. In *Brewer*, the Missouri Supreme Court held as unconscionable an arbitration agreement that required the plaintiff to resolve any claim against the defendant in arbitration and yet allowed the defendant to retain its right to seek self-help repossession. 634 S.W.3d at 487. Here, the arbitration provision allows both parties to retain the right to seek remedies in small claims court and to seek self-help remedies, (Doc. #8-1, p. 4), and Plaintiff does not argue that either the contract as a whole or the arbitration provision in particular is unconscionable. Finally, the court in *Woods* found that the original sales contract was conditioned upon the plaintiff obtaining financing, which she never did. (Doc. #24-1, p. 2). In contrast, the arbitration provision at issue here was not subject to any condition that went unfulfilled. Therefore, the challenged arbitration agreement is valid and enforceable.

### B. Agreement Between the Litigants

Plaintiff further argues that Defendant cannot enforce the arbitration agreement, if this Court deems one to exist, because the express language of the arbitration provision limits enforcement solely to Plaintiff and Seller. (Doc. #24, p. 4). Defendant argues that because Seller assigned "the entire Contract, including the Arbitration agreement, to [Defendant]," the right to enforce the arbitration provision belongs to Defendant, not to Seller. (Doc. #25, p. 1). The decision of the Kansas Court of Appeals in *Hemphill v. Ford Motor. Co.*, 206 P. 2d 1 (2009), shows why Plaintiff's argument fails. The *Hemphill* court held that the defendant, a financing company, had the right to enforce an arbitration provision in a car purchase contract originally formed between the plaintiff and a car dealer because the defendant was the car dealer's assignee and the contract expressly provided for arbitration of any claim between the plaintiff and the car dealer's "assigns." 206 P.2d at 7. Here, as in *Hemphill*, Seller assigned its interests under the car purchase contract to Defendant. The presently disputed arbitration provision in the car purchase contract, like the one in *Hemphill*, expressly allows for arbitration of any claim between Plaintiff and Seller's "assigns." (Doc. #8-1, p. 4).

Even if this Court construed the enforcement language in the arbitration provision to include only Plaintiff and Seller, Defendant would still have the right to enforce the arbitration agreement. "An assignment passes all the assignor's title and interest to the assignee and divests the assignor of all right of control over subject matter of the assignment." *Chamberlain v. Farm Bureau Mut. Ins. Co., Inc.*, 137 P.3d 1081, 1090 (Kan. Ct. App. 2006) (citing *Bolz v. State Farm Mut. Auto Ins. Co.*, 52 P.2d 898, 904 (Kan. 2002)). Here, it is undisputed that Seller expressly assigned its interests under the car purchase contract, including those flowing from the arbitration provision, to Defendant. (Doc. #8-1, p. 3) Therefore, Defendant has the right to

enforce the arbitration provision.  In fact, Seller can no longer enforce this provision even if it wanted to because the assignment to Defendant divested Seller "of all right of control over" the arbitration provision.  *See Chamberlain*, 137 P.2d at 1090.  Taken to its logical conclusion, Plaintiff's argument would render the arbitration provision unenforceable by both Seller and Defendant.  This absurd result would defeat the "liberal federal policy favoring arbitration agreements."  *Moses H. Cone*, 460 U.S. at 24.  Because this Court finds that an enforceable arbitration agreement exists between the parties, and because no one disputes that Plaintiff's claims fall within the scope of that agreement, this Court must order the parties "to proceed to arbitration in accordance with the terms of the agreement."  9 U.S.C. § 4; *See Pro Tech Indus.*, 377 F.3d at 871.

### IV.     Conclusion

Accordingly, Defendant Ally Financial Inc.'s Motion to Compel Arbitration and Dismiss Action (Doc. #7) is granted.  This case is dismissed with prejudice.

**IT IS SO ORDERED.**

/s/ Stephen R. Bough
STEPHEN R. BOUGH
UNITED STATES DISTRICT JUDGE

Dated: November 1, 2018